### HILL v. TOWN.

CORPORATIONS — STOCKHOLDERS' MEETINGS — ELECTION OF DI-
    RECTORS—STATUTES.

   In quo warranto proceedings to determine the right of di-
       rectors of a corporation to their respective offices, the statu-
       tory requirement that a majority of the shares of stock con-
       stitutes a quorum of stockholders for the transaction of
       business is mandatory (Act No. 232, Pub. Acts 1903, 4 How.
       Stat. [2d Ed.] § 9541), and directors elected at a meeting at
       which 1,100 out of 10,000 shares were represented, were not
       entitled to hold office.[1]

[1] As to what constitutes a quorum for meeting of stockholders,
see note in 21 L. R. A. 174.

For effect of withdrawal of stockholders from meeting to break
quorum, see note in 36 L. R. A. (N. S.) 45.

Case-made from Eaton; Smith, J.   Submitted June 5, 1912.   ( Docket No. 18.)   Decided November 8, 1912.

Information in the nature of quo warranto by Calvin H. Hill and others against Frank P. Town and others to determine the right of respondents to the office of directors of a corporation.   A judgment confirming respondents' title to the office is reviewed by relators on case-made. Reversed.

*Garry C. Fox (Butterfield & Keeney,* of counsel), for appellants.

*Elmer N. Peters, L. H. McCall,* and *James M. Powers,* for respondents.

McALVAY, J.   In the circuit court for the county of Eaton, relators, on October 5, 1911, asked and were given leave to file an information in the nature of a quo warranto against respondents to determine by what right they assumed to act as directors of the Duplex-Power Car Company, a Michigan corporation, relators claiming that they were the lawful directors of such corporation, and that respondents unlawfully assumed such rights and authority as directors, and unlawfully used, held, and re-tained the factory, offices, and all the personal property of said corporation.   A demurrer to this information was in-terposed by defendants, but, before a hearing was had thereon, relators discontinued as to one of the respondents, and filed an amended information.   To this information, as amended, respondents entered a plea, in substance averring that they were the duly and lawfully elected directors of said corporation, admitting that relators were duly elected directors of said corporation at the annual stockholders' meeting held on August 6, 1910; that their said election was for the term of one year and until their successors should be elected; that the annual meeting for the following year, of which due notice was given to the stockholders of the corporation, was called to be held on

August 5, 1911, and an adjournment was had to September 19, 1911; that at such adjourned meeting the respondents were regularly elected directors by a majority vote of the stockholders and stock present at such adjourned meeting, and that therefore relators ceased to be such directors, and respondents, by virtue of the said election, became and still continue to be the lawfully elected and qualified directors of said corporation, and that by reason thereof they are rightfully and lawfully acting as such directors.

To this plea the relators filed a replication November 22, 1911, the material parts of which are as follows: That Act No. 232 of the Public Acts of 1903, and amendments thereof, require stockholders holding a majority of the stock in corporations incorporated thereunder to be present, either in person or by proxy, in order to lawfully do business at any meeting of said stockholders; that at the annual meeting of this corporation, which is incorporated under this act, held on August 5, 1911, there were not present stockholders, either in person or by proxy, holding a majority of such stock, and not a sufficient representation of stock to constitute a lawful quorum for the transaction of business, except that of adjournment to a future day, as provided by said act; that the adjourned meeting held September 19, 1911, was not a lawful meeting of the stockholders, for the reason that a lawful quorum was not present as provided by said act, to transact any business other than to adjourn said meeting; that said act requires that all voting at such meetings of stockholders shall be by shares of stock, one vote for each share; that the total shares of stock of the said corporation was at that time and still is 10,000 shares, and that at such adjourned meeting there were less than 1,100 shares represented by said stockholders present, either in person or by proxy; that the election of respondents at said meeting was therefore unlawful, and they were without right to exercise and enjoy the offices of directors in the corporation, or to use, hold, and retain its property. Respondents filed a rejoin-

der to this replication, denying the construction given to this act by relators. To this rejoinder relators filed a surrejoinder. Said cause was tried before a jury, demanded by respondents, to determine the disputed facts raised by the pleadings.

The findings of the jury are included in the opinion of the court. Of these findings it is only necessary to say, it appears that the jury upon the first issue found that only 3,968 shares of stock of the corporation were represented by stockholders present and by proxies at the annual stockholders' meeting held August 5, 1911; and upon the second issue that no by-law providing as to what should constitute a quorum at any meeting of the stockholders was ever enacted.

It is admitted in the case that at the adjourned stockholders' meeting, at which respondents claim to have been elected directors, held September 19, 1911, not more than 1,100 shares of stock were represented by stockholders present and by proxies. In the opinion of the court in this case, which has been stipulated to be considered as the findings of the court herein, it was held that the respondents were legally chosen as directors of this corporation, and were not usurping such offices and should not be ousted; that the information in the case was not supported by the proofs and that the relief asked by relators should be denied, and a judgment of non-ouster in the usual form, with costs to be taxed, was entered in said cause. From this judgment the case is before this court for review upon a case-made.

For the purpose of a better understanding of the errors assigned, it will be necessary to quote the following material portions of the findings of the court:

"This is a proceeding to test the right of respondents to hold and exercise the offices of directors of the Duplex-Power Car Company, a corporation doing business in the city of Charlotte, Mich. The capital stock of said company is $100,000, divided into 10,000 shares of $10 each. The company was organized under Act No. 232 of the

Public Acts of 1903. The vital question at issue is whether a minority of the stockholders in interest can elect a board of directors. The relators contend that the respondents, having been elected at a meeting of the stockholders having a minority of the stock of the company, were not legally elected, and are not the lawful directors, and that the relators, having been elected prior thereto, are the lawful directors of said corporation. It is not disputed that the relators were duly and regularly chosen as the directors of said company on August 6, 1910, and it is conceded that if the respondents were not legally elected on September 19, 1911, the relators would hold over, and would now be the legal officers of said corporation and should have a judgment of ouster against respondents. The respondents, if elected, were elected at an adjourned meeting on September 19, 1911. It is admitted in the case that the annual stockholders' meeting was legally called and held on the 5th day of August, 1911, and legally continued by adjournment to September 19, 1911. It is admitted that at the adjourned meeting of September 19, 1911, about 1,100 shares of stock were represented by stockholders present and by proxy, and that at that meeting each of the respondents received nearly, if not, the unanimous vote of all the shares present. The issues are practically framed by the pleadings. A jury was asked for, and called to determine certain issues of fact. These issues of fact were prepared and submitted to the jury by the court."

Then follow the issues submitted to the jury, including the questions and answers thereto, the substance of which has already been given. The court proceeds:

" I do not regard the first issue as important in the determination of this case. The determination of the second issue is important. It is conceded that there were present at the adjourned meeting at which respondents were elected only about 1,100 shares of stock. The answer of the jury to the question constituting the second issue being in the negative, the rights of relators and respondents are dependent upon the construction given section 10 of Act No. 232 of the Public Acts of 1903, the act under which the Duplex-Power Car Company was brought into existence. Section 10 reads as follows:

"'A majority of the directors of every manufacturing or mercantile corporation convened according to the by-laws, shall constitute a quorum for the transaction of business; and the stockholders holding a majority of the stock at any meeting of the stockholders, shall be capable of transacting the business of that meeting, except as herein otherwise provided; and at all meetings of such stockholders each share shall be entitled to one vote. Stockholders may appear and vote in person or by proxy duly filed.'

"I am not in doubt as to what should be the interpretation of this statute. It is a self-evident proposition that the owners of a majority of the stock of any corporation have the power to control its affairs by electing a greater number of the board of directors. To do this, however, they must attend the meeting of the stockholders and care for their rights, and, if they neglect to do this, they are bound by the action of those who do attend. That is conceded to be the common-law rule, and it is a rule well founded in right and common sense. In this case there is no claim that there was any fraud or any action on the part of the minority stockholders in interest or on the part of respondents by which the relators, or the majority stockholders in·interest, were in any way deceived or misled as to the time to which the annual meeting was adjourned. 'The stockholders holding a majority of the stock, at any (this) meeting of the stockholders,' can transact the business of the meeting. That was what was done at the meeting of this corporation September 19, 1911, and I think it should be held as a matter of justice, and must be held as a matter of law, that the stockholders present at that meeting cannot be restricted in or denied their right to attend to the business for which the meeting was called, because of the absence of other stockholders. It is the judgment of the court that the respondents are not usurping the offices of directors of said corporation, but that they were legally chosen as directors and should not be ousted, and that the information in the nature of a quo warranto filed in this case is not supported by the proof and that the relief asked for by relators should be denied. Such an order will be entered with costs to the respondents.

"Dated February 28, 1912."

The question involved in the case is a single one. It arises on the construction of section 10 of Act No. 232 of

the Public Acts of 1903 (4 How. Stat. [2d Ed.] § 9541), quoted above in the findings of the court. A reading of the findings of the court shows that the construction given to this section was that it in no way changed the common-law rule, and that it authorized the transaction of business at any stockholders' meeting by those stockholders present without reference to the amount of stock of the corporation they represented in person or by proxy, and that the only requirement to make any action valid was that it received the votes of a majority of the stock present. Relators contend that in so holding the court was in error; that a fair construction of this section requires this court to hold that to authorize the stockholders at any meeting of the stockholders of such a corporation to transact business, there must be represented in person or by proxy a majority of all the stock of such corporation.

This provision has existed as a part of the law of this State for more than 50 years, and appears in all of the compilations of our statutes since 1853. The exact question is one of first impression in this court. In the case of *Star Line* v. *Van Vliet*, 43 Mich. 364 (5 N. W. 418), it is indicated that the court accepted the construction claimed by relators in the instant case. The dispute in that case arose over the claimed want of authority of a committee appointed by the stockholders of the corporation (the affairs of which the stockholders were investigating) to bind the corporation by the employment of expert accountants. The court said:

"Generally, no doubt, a stockholders' meeting would not be authorized to contract on such subjects, the ordinary management being with the directors; but, as the purpose here was in part at least to investigate what had been done under the superintendence of the directors, it was competent for the holders of a majority of the stock to do what was done. Comp. Laws 1871, § 2682. There is no ground on which the corporation can urge an intendment against the validity of the resolution, and arbitrarily deny its regularity and force. In view of the facts presented, every presumption is the other way. There

was no offer of proof that the stockholders present at the meeting did not hold a majority of the stock."

Section 2682 of the Compiled Laws of 1871, referred to by the court, contained in an act to authorize the for-' mation of corporations for the purpose of engaging in commerce or navigation, is identical in all respects with the section now under consideration. This is the only case where any reference has been made to the question by this court.

In the State of New York the question here involved was passed upon by the supreme court, at special term, as follows:

" By general law, the stockholders present in person or by proxy at a meeting of stockholders constitute a quorum. The general corporation law (Laws 1892, c. 687), however, allows the directors to change this by by-law, and fix the amount of stock which must be represented in order to make a quorum. Section 11. In this company the following by-law was passed, viz:

" 'A majority of the stock present in person or by proxy at any meeting of the stockholders shall constitute a quorum.'

"It is without any punctuation marks. Unless to establish a quorum different to that which the general law makes, this by-law could have had no object. It cannot be construed as meaning that a 'majority' of the stock actually represented at a meeting should be a quorum, for that would be unlawful. A majority cannot separate itself from the minority, and be a quorum. All present are the quorum. It must therefore mean that it is necessary that a majority of the stock of the company shall be present in person or by proxy to make a quorum. * * * " *In re Rapid Transit Ferry Co.,* 19 Misc. Rep. (N. Y.) 409, 43 N. Y. Supp. 538.

Upon a hearing before the appellate division of the supreme court of that State, it approved of the construction given to this by-law by the lower court, but held that, by reason of the statute making provision for the election of directors of corporations, the by-law did not apply.

*Matter of Rapid Transit Ferry Co.*, 15 App. Div. (N. Y.) 530, 532 (44 N. Y. Supp. 539). The construction of the following by-law of a corporation was before the supreme court of Maine:

"No business shall be transacted at any meeting of the stockholders unless a majority of the stock is represented, except to organize the meeting and adjourn to some future time."

The court said:

"What should constitute a quorum for the transaction of business at their meetings, was a question which the stockholders had a right to determine (R. S., c. 46, § 6), and this they did by the adoption of the foregoing by-law providing that, unless a majority of the stock was represented, no business should be transacted at any meeting, except to organize and adjourn to some future time.

"At the annual meeting of June 8, 1885, at which it is claimed the new board was elected, 138 shares of the capital stock were represented, and no more. Was there a majority of the stock represented at that meeting? If not, there could be no legal election of officers at that meeting.

"We think a fair and reasonable as well as proper construction of the by-laws leaves no room for doubt as to what was intended by a 'majority' of the stock. It was divided into 400 shares, and it would take 201 shares to constitute a majority of that stock. The language of the by-law is plain and susceptible of no ambiguity.    *    *    *

"But inasmuch as there was not, in fact, a majority of stock represented at that meeting, there could be no legal business transacted, except to organize and adjourn to some future time. Such was the language as well as the evident intent and meaning of the by-law, duly adopted for the government of the corporation. Consequently it was not in the power of a minority to do that which only a majority could legally accomplish. Hence, it cannot be held that the board which now represents this plaintiff corporation, and which claims the right to commence and prosecute this suit, was legally elected.

"The consequence is that the old board of directors, about whose election no question is raised, continued in office by virtue of the by-laws of the company, and were the only legal board of directors at the time this suit was

commenced." *Ellsworth Woolen Manfg. Co.* v. *Faunce*, 79 Me. 440, 443 (10 Atl. 250, 251).

The authorities above cited favor the construction contended for by relators, and are all the authorities we have been able to find after a somewhat extended search. It is clear that the legislature by this section under consideration intended to establish a quorum for all stockholders' meetings of corporations organized under this act, and the fact that the construction of an exactly similar statutory provision indicated by this court in *Star Line* v. *Van Vliet, supra*, has never been questioned, shows that such construction has been accepted. The construction which the respondents insist upon, as appears from the decision of the trial court and their brief in this court, is, as already stated, that the only requisite to the validity of business transacted at a stockholders' meeting is that a majority of the stock present voted in its favor, without reference to the number of shares of stock represented at such meeting. Such a contention, reduced to its lowest terms, would authorize a meeting held by two stockholders, one representing one share of stock and the other representing two shares of stock, to lawfully transact business and elect a board of directors by two votes. We scarcely think that such can seriously be contended to have been the intention of the legislature in enacting this law. The reasonable construction of this section is, as contended by relators, that, in order to hold a lawful meeting of stockholders for the transaction of business, a majority of all the stock of the corporation must be represented in person or by proxy to constitute a statutory quorum, and that, the majority of the stock being so represented, the meeting could then lawfully proceed, and business could be transacted lawfully by a vote of the majority of such quorum. Such construction does not require that a majority of all the stock of a corporation must vote in favor of every proposition before such meeting, but only a majority of the quorum. In the findings of the court it is said:

"The vital question at issue is whether a minority of the stockholders in interest can elect a board of directors."

This statement does not state the issue. The vital question at issue is whether this section fixes the quorum required to authorize the transaction of business at a meeting of stockholders, and what constitutes such quorum. As was said in *Re Rapid Transit Ferry Co.*, *supra:*

"A majority cannot separate itself from the minority, and be a quorum. All present are the quorum."

And a majority of the statutory quorum controls in such meeting.

All of the authorities agree that the requirements of a statutory quorum are mandatory. It is urged that, under such a construction, a majority of the stockholders may absent themselves from meetings and prevent the transaction of any business by the stockholders, and continue indefinitely their control of corporate affairs. This is met by the reply that there could be no reason or inducement why a majority in interest of the stockholders should absent themselves from such meetings when by their presence and voting their stock they could control the affairs. And a conclusive answer is that a minority of the stockholders would have the right to enforce the attendance of stockholders sufficient to make the required quorum necessary to transact business and to permit a minority to exercise the right of cumulative voting by proper proceedings upon a sufficient showing in a court of competent jurisdiction. The court below was in error, and should have granted relators the relief prayed for. Under the undisputed facts in this case, it appears that the respondents were unlawfully usurping the offices of directors in this corporation, and that relators, having been duly and regularly elected as such directors, and no successors having been legally elected, continued to hold such offices, and are now the lawful directors of such corporation.

Therefore the judgment of the circuit court is reversed,

and no new trial will be granted.   A judgment of ouster against said respondents and in favor of the relators will be entered in this court, with costs of both courts to be taxed.

MOORE, C. J., and STEERE, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.